## REID, ADMINISTRATOR, v. TERRE HAUTE, INDIANAPOLIS AND EASTERN TRACTION COMPANY.

[No. 10,404. Filed June 25, 1920.]

1. STREET RAILROADS.—*Crossing Accident.*—*Evidence of Negligence Considered.*—In an action for death of the driver of a wagon struck by a street car at a highway crossing, evidence *held* to show that the defendant was negligent either in the rate of speed at which its car approached the crossing or by reason of the use of an insufficient headlight. p. 549.

2. STREET RAILROADS.—*Crossing Accident.*—*Contributory Negligence of Deceased.*—*No Evidence Whether He Looked or Listened.*—*Presumption.*—Where there was no evidence as to whether deceased looked or listened for the approach of defendant's car to the crossing, the presumption of the freedom of deceased from contributory negligence remained in force. p. 549.

3. STREET RAILROADS.—*Crossing Accident.*—*Right of Traveler on Highway to Assume Railroad Will Do Its Duty.*—Where deceased, if he had looked might have seen the dim headlight of defendant's approaching car, and if he had listened might have heard little or no noise therefrom because the car was coasting, and been misled as to the distance of the car from the crossing, and no gong was sounding, he would have the right to assume, in the absence of contrary indication, that the employes operating the car would not fail to discharge the duty owed to him under the circumstances. p. 549.

4. STREET RAILROADS.—*Crossing Accident.*—*Directing Verdict.*—*Contributory Negligence.*—In an action for death from personal injuries received in a collision with a street car upon a highway crossing, before the court would be justified in directing a verdict for defendant on account of contributory negligence of the deceased, the evidence must be susceptible of but one inference on that question. p. 550.

5. STREET RAILROADS.—*Crossing Accident.*—*Contributory Negligence.*—*When Not Matter of Law.*—In an action for death from injuries received at a street railroad crossing, where the evidence does not conclusively show that at the time deceased attempted to cross the track, the defendant's car was in such close proximity and that deceased knew thereof, that an ordinarily prudent person would not, under the circumstances known to him, have attempted to cross, it cannot be said as matter of law that deceased was guilty of contributory negligence. p. 550.

From Fayette Circuit Court; *Raymond S. Springer,* Judge.

Action by Pettis A. Reid, administrator of the estate of Gilvie L. Coddington, deceased, against the Terre Haute, Indianapolis and Eastern Traction Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Samuel D. Miller, Frank C. Dailey, William H. Thompson, Gath Freeman* and *G. Edwin Johnson,* for appellant.

*Wiles & Root, Byram Robbins, W. H. Latta* and *D. E. Watson,* for appellee.

ENLOE, P. J.—Action by appellant, as administrator of the estate of Gilvie L. Coddington, deceased, for damages.

To a complaint in two paragraphs, the appellee filed answer in general denial, and the issues thus made were submitted to a jury for trial. At the close of the evidence offered by appellant in chief, appellee requested the court to instruct the jury to return a verdict for the defendant, which motion was by the court sustained, and the jury instructed accordingly, to which action by the court the appellant duly excepted. He then filed his motion for a new trial, in which he challenged the action of the court in giving said instruction, which being overruled, this appeal is prosecuted, and the only assigned error necessary to be considered is that relating to the overruling of said motion for a new trial.

The complaint was in two paragraphs. The negligence charged in the first paragraph was: (1) Running said car at an excessive rate of speed; (2) failure to give any warning of the approach of said car to said crossing; and (3) negligently operating said car, with weak and insufficient headlight.

The second paragraph of complaint was based upon

the doctrine of last clear chance, and the negligence alleged was the failure of the motorman to use ordinary care to stop said car after he discovered the perilous situation of the deceased, whereby, etc.

Through the city of Richmond, and for a short distance to the west of said city, as shown by the record before us, the appellee maintains its track in the center of the street. A short distance west of the west corporation line of said city the track of appellee leaves the center of said street or highway, and, by curving first to the south and then to the west, leaves the center of said highway and proceeds in a westerly direction, the track being laid parallel to said public highway, but adjacent thereto, on the south side thereof. It continues in this relative position with said highway to a point about 2,000 feet west of the place where the accident in question happened.

The evidence discloses that on the evening of September 13, 1915, the deceased, shortly before the hour of 9 p.m. was driving an oil tank wagon, drawn by two horses, eastwardly upon said public highway—the National Road—and approached and attempted to cross the track of appellee at the point where it leaves the center of said road; that while crossing said track his wagon or team, or both wagon and team, were struck by a car of appellee which came from the west; that as a result of said collision the deceased sustained injuries from which he shortly thereafter died; that appellant is the duly qualified and acting administrator of his estate; that the deceased was, at the time of his death, thirty-two years old, and that he left him surviving a widow and two children.

The only question necessary to be determined in this appeal is that relating to the giving of said peremptory instruction.

As preliminary to a consideration of the question in-

volved, a consideration of the statute will be helpful. Section 362 Burns 1914, Acts 1899 p. 58, provides: "That hereafter in all actions for damages brought on account of the alleged negligence of any person, copartnership or corporation for causing personal injuries, or the death of any person, it shall not be necessary for the plaintiff in such action to allege or prove the want of contributory negligence on the part of the plaintiff or on the part of the person for whose injury or death the action may be brought. Contributory negligence on the part of the plaintiff, or such other person, shall be a matter of defense, and such defense may be proved under the answer of general denial. * * *"

In *Pittsburgh, etc., R. Co.* v. *Reed* (1905), 36 Ind. App. 67, 75 N. E. 50, it was said: "The burden of establishing such defense is upon the defendant, and so continues throughout the case. It must be presumed in such case, until the defense of contributory negligence has been sufficiently proved, that the person killed or injured was free from contributory negligence in all respects." Citing authorities. However, in the case of *Cleveland, etc., R. Co.* v. *Wise* (1917), 186 Ind. 316, 116 N. E. 299, the Supreme Court said that the above statement of the rule was too broad; and it was there held (pp. 320, 321) that this presumption of freedom from contributory negligence only prevailed in favor of the injured party until there was some evidence introduced on the subject of contributory negligence, when the presumption disappeared. After some evidence has been introduced on the subject of contributory negligence, there is no presumption in favor of either party as to that issue. It becomes then a question of fact, to be determined as any other fact, keeping in view that the burden is upon the defendant to establish such contributory negligence.

In cases like the instant one the plaintiff enters upon

Reid, Admr., *v.* Terre Haute, etc., Trac. Co.—73 Ind. App. 541.

the trial with a presumption in his favor that the deceased, at the time he received the injury, was in the exercise of due care and caution for his own safety, and in *Bates* v. *Pricket* (1854), 5 Ind. 22, 61 Am. Dec. 73, it was said: "A presumption, like a fact proved, remains available to the party in whose favor it arises, until overcome by opposing evidence." See, also, *Cleveland, etc., R. Co.* v. *Wise, supra.*

Keeping the foregoing rules in mind, we shall now notice what the law has declared to be the rights of the parties, and then examine the record and try to discover whether it presents such a state of facts as to entitle the appellee to have the instruction in question given to the jury.

In the case of *West* v. *National Casualty Co.* (1916), 61 Ind. App. 479, 112 N. E. 115, this court said: "It is well settled by the decisions of both the Supreme Court and this court, that such an instruction, in favor of the defendant, is never proper or authorized except in cases where there is a total absence of evidence upon some issue or fact essential and necessary to the plaintiff's right to recover, or where there is no conflict in the evidence, and, when considered in its entirety, such evidence, with all reasonable and legitimate inferences which the jury might properly draw therefrom, *is susceptible of but one inference, viz., an inference which necessitates the verdict so directed.*" (Our italics.)

In considering this case, it is also of importance that we keep in mind the relative rights and situation of the parties.

It was said in *Louisville, etc., Traction Co.* v. *Lottich* (1915), 59 Ind. App. 426, 106 N. E. 903, that the rights of the parties upon the street and to the use thereof "were equal and each was bound to use ordinary care to avoid a collision." See, also, *Indianapolis, etc., Trac-*

*tion Co.* v. *Senour, Admx.* (1919), 71 Ind. App. 10, 122 N. E. 772. In *Indianapolis St. R. Co.* v. *Schmidt* (1905), 35 Ind. App. 202, 71 N. E. 663, 72 N. E. 478, it was said, quoting from Baldwin, American Railroad Law, p. 415: " 'These rules do not fully apply to such parts of interurban railroads laid in highways or of ordinary street railways as are in populated communities. * * * The railroad car is also under easy control and can be readily and quickly stopped. Its rate of speed in populated districts is generally moderate. * * * Hence the absolute stop, look, and listen rule, is nowhere applied to street railway crossings in cities.' " The court further quotes, with approval, from the same author (p. 421), where he says: " 'Those traveling along a street on which a street railway is in operation have as good a right to use the street where the tracks are laid as to use any other part of it, provided they act with due regard for the convenient and safe movement of the cars upon them. These must also be run with due regard for their safety. The motorman must be on the constant watch for teams or cyclists turning upon the track, and keep his car under such control as to be able to slacken speed or come to a stop should their safety seem reasonably to demand it.' " See, also, *Chicago, etc., R. Co.* v. *Wesolowski, Admx.* (1919), 70 Ind. App. 5, 122 N. E. 781.

A person traveling upon a street in which is laid the tracks of a street railroad company, and which tracks he must cross in pursuing his journey, has a right to assume, in the absence of some indication to the contrary, that the employes of such railroad company will not fail to discharge the duty which is owed to him, and within reasonable limits to govern his conduct accordingly. *Indianapolis, etc., Traction Co.* v. *Senour, Admx., supra.*

In the case of *Public Utilities Co.* v. *Iverson* (1918), 187 Ind. 672, 121 N. E. 33, the following instruction was given by the trial court: " 'The mere fact that plaintiff could see an approaching car, by which he was afterwards struck, does not of itself establish contributory negligence, as the car must not only be approaching, but must be in such close proximity, taking into account a reasonable rate of speed, or the apparent rate of speed, that an ordinarily prudent man would not attempt to cross.' " On appeal it was approved as being a correct statement of the law. See, also, *Saylor* v. *Union Traction Co.* (1907), 40 Ind. App. 381, 81 N. E. 94.

The appellee in its brief filed herein says: "Only one point is made in appellant's brief. It is that the court erred in taking the case from the jury. Appellant tries to establish that there was sufficient evidence to carry the case to the jury. Appellee contends that there was no error as the evidence does not conflict, and does not establish a cause of action, and does establish contributory negligence."

Waiving, for the time being, the question of contributory negligence, we shall examine the evidence with a view of determining whether there is any sufficient evidence tending fairly to establish the several charges of negligence, as set forth in said first paragraph of complaint. The first charge was that of excessive speed.

Appellee's motorman, operating said car, testified that the car was running eighteen to twenty miles per hour; that the length of his run was a little over two miles; that his schedule time to make the one-way trip was twenty minutes; that by the light of the headlight on the front of his car he could see a distance of two or three feet on each side of the track, and for a distance of twenty to thirty feet ahead of the car; that he first saw the team hitched to the wagon in question when

his car was only twenty to thirty feet from said team, and the horses were then entering upon the track; that his car struck both the team and the wagon; that after the car struck the team and wagon it moved ten or fifteen feet; that a bridge is about 200 feet west of the point where the wagon was struck; that, between the bridge and the place where the wagon was struck, he sounded his gong several different times, but he fails to tell us where it was, with reference to the place of the accident, that he sounded said gong. However, a witness, who was a passenger on said car at the time of the collision testified, "the ringing of the bell drawed my attention and the motorman cried, 'look out, look out, look out,' three times; he was turning the brake of the car; these three came all at the same time, almost instantly." This testimony was in no way in conflict with that given by the motorman. He did not locate the place of the sounding of the gong; the passenger by his testimony fixed the place. As the motorman did not see said team and wagon, according to his own testimony, until within twenty or thirty feet of them, this sounding of the gong might reasonably have been fixed by the jury as taking place only an instant before said collision, and when the team were already, according to said motorman, entering upon the track.

Another witness testified that at the time in question he was walking in the road, a short distance behind the wagon in question, as the same was being driven by deceased; that the car came from the west, behind them; that he did not see the car until it went past him; that he heard no gong sounded as the car approached the crossing; that the car was not over fifteen feet from the wagon or team when he first heard it.

It was also in evidence that as said car approached this crossing it was "coasting." The motorman further testified that he began to stop the car, using both the

hand brake and "reverse," *the instant he saw the team and wagon.* Yet, notwithstanding he then did all in his power to do to avert a collision, if his testimony is to be believed, his car failed to stop within said twenty or thirty feet, but struck the wagon, which the testimony shows weighed approximately 2,000 pounds, and the team of horses which weighed approximately 2,500 to 2,600 pounds, and, on the testimony of said motorman, knocked at least one of the horses down so that it got under the front end of the car, and then moved about ten or fifteen feet—other witnesses place the distance at twenty-five to thirty feet.

When we consider the duties of a motorman in operating his car upon, along, and over a street or public highway with reference to the rights of other 1. persons traveling upon such street or highway, and that he should be on constant watch for teams, etc., and that he should keep his car under such control that the speed of the same could be slackened, or the car brought to a stop, to avoid a collision with others traveling upon such street or highway, should occasion reasonably demand it, it becomes at once very evident that in the instant case the motorman was negligent, either in running his car at the rate of speed at which it was run—a speed at which he could not stop it, if his testimony is to be believed, within the limits of his vision of said tracks, as lighted by said headlight on said car—or that the headlight on said car was insufficient, in that it would not, by its light, enable the motorman to see the track ahead of his car a sufficient distance to enable him to stop the car upon discovering an obstruction upon said track.

There being no evidence in this case upon the subject as to whether the deceased looked or listened for 2-3. the approach of said car, the presumption of freedom from fault still remained in his favor.

For aught that appears, he may have looked and seen the headlight of said car, yet have been deceived as to its distance from him by the dimness thereof, or he may have been misled as to its distance from said crossing by both the dimness of said headlight and the fact that the car was "coasting," and therefore making but little noise. And, under the circumstances disclosed, and in the absence of some indication to the contrary, he had a right to assume, if he looked and saw said dim headlight, and heard no noise of the approaching car, or any gong sounding, that the employes operating such car would not fail to discharge the duty which they owed to him under the circumstances.

In cases of this kind, contributory negligence on the part of the deceased must conclusively appear; the evidence must be susceptible of but *one* inference—

4. negligence on the part of deceased—before the court would be justified in taking the case from the jury.

The evidence in this case does not conclusively show that at the time he attempted to cross said track the car was in such close proximity to said crossing, and

5. that deceased knew of its approach thereto, and that an ordinarily prudent person would not under the circumstances, known to the deceased, have attempted to make said crossing. This record does not show contributory negligence on the part of the deceased such as to prevent a recovery in this case as a matter of law.

The trial court erred in giving said instruction. The death of appellant, administrator, during the pendency of this appeal, has been suggested. This cause is therefore reversed as of the date of submission hereof, and remanded, with instructions to the trial court to sustain appellant's motion for a new trial, and for further proceedings.